**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
Bankruptcy Judge Thomas B. McNamara

| | |
|---|---|
| In re:<br><br>EXZERT WATSON, III<br><br>Debtor. | Bankruptcy Case No. 26-10261-TBM<br>Chapter 7 |
| MELISSA UBALLE,<br><br>Plaintiff,<br><br>v.<br><br>EXZERT WATSON, III,<br><br>Defendant. | Adv. Pro. No. 26-1104-TBM |

## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### I. Introduction.

The Debtor, Exzert Watson, III (the "Debtor"), filed for protection under Chapter 7 of the Bankruptcy Code.[1] Pre-bankruptcy, Melissa Uballe (the "Plaintiff"), sued the Debtor and others for civil theft and outrageous conduct in the Arapahoe County (Colorado) District Court (the "State Court") in the case captioned: *Melissa Uballe v. Exzert Watson et al.*, Case No. 2024-CV-31115 (District Court, Arapahoe County, Colorado) (the "State Court Action"). On October 3, 2025, the State Court entered post-trial "Findings of Fact, Conclusions of Law, and Order" (the "Merits Judgment") in the State Court Action against the Debtor and in favor of the Plaintiff for $32,734.11 on such claims. A few months later, the State Court issued an "Order Re Plaintiff's Motion in Support of Request for Reasonable Attorneys' Fees and Costs" (the "Fees Judgment") awarding the Plaintiff attorney's fees and costs of $44,221.04. The Debtor appealed. But he later dismissed his appeal with prejudice. So, the Merits Judgment and Fees Judgment are final.

Post-bankruptcy, the Plaintiff commenced this Adversary Proceeding against the Debtor. The Plaintiff asserted that the debt owed by the Debtor to her under the

---

[1] 11 U.S.C. § 101 et seq. Unless otherwise indicated, all references to "Section" are to Sections of the Bankruptcy Code.

Merits Judgment and Fees Judgment is nondischargeable under Section 523(a)(6) for "willful and malicious injury." The Debtor countered that the debt is dischargeable. The dispute has been set for trial. In the run-up to trial, the Plaintiff filed a "Motion For Summary Judgment" (the "Summary Judgment Motion") arguing that the Merits Judgment and Fees Judgment should be afforded collateral estoppel effect.[2] Then, the Plaintiff argued: "Given that the state court claims were intentional torts (civil theft and outrageous conduct), the factual findings from the state court are more than sufficient to support a finding of nondischargeability pursuant to 11 U.S.C. § 523(a)(6) in this adversary proceeding."[3] The Debtor contested the Summary Judgment Motion. The matter has been fully briefed.

For the reasons set forth in this Order, the Court grants the Summary Judgment Motion, in part, and determines that the Merits Judgment is entitled to full collateral estoppel effect and the debt owed by the Debtor to the Plaintiff under the Merits Judgment is nondischargeable under Section 523(a)(6). However, the Fees Judgment is unclear whether it is based only on the Plaintiff's civil theft claim in the State Court Action or whether it also relates to a separate lawsuit. Accordingly, the Court denies summary judgment with respect to the Fees Judgment.

## II. <u>Jurisdiction and Venue</u>.

The Court has jurisdiction to enter final judgment in this nondischargeability dispute pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) (matters concerning administration of the bankruptcy estate); (b)(2)(B) (allowance or disallowance of claims against the estate); (b)(2)(I) (determinations as to the dischargeability of particular debts); and (b)(2)(O) (other proceedings affecting the liquidation of assets of the estate). Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409. No party challenged the Court's jurisdiction or the Debtor's choice of venue in the District of Colorado. Thus, the Court finds that it has jurisdiction to enter final judgment in this Adversary Proceeding and venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. *See also Johnson v. Riebesell* (*In re Riebesell*), 586 F.3d 782, 793-94 (10th Cir. 2009) (bankruptcy courts have jurisdiction to determine nondischargeability of debts, liquidate nondischargeable debts, and enter a monetary judgment on nondischargeable debts).

## III. <u>Procedural Background</u>.[4]

---

[2] Docket No. 21. Unless otherwise indicated, the Court will refer to documents from the CM/ECF docket for this Adversary Proceeding, *Melissa Uballe v. Exzert Watson (In re Exzert Watson),* Adv. Pro. No. 26-1104-TBM (Bankr. D. Colo.) using the convention: "Docket No. ___."

[3] *Id.* at *6.*

[4] The Court takes judicial notice of the filings on the Docket. *See St. Louis Baptist Temple, Inc. v. F.D.I.C.,* 605 F.2d 1169, 1172 (10th Cir. 1979) (court may *sua sponte* take judicial notice of its own docket and "in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue.").

## A. The Bankruptcy Main Case.

On January 16, 2026 (the "Petition Date"), the Debtor filed for relief under Chapter 7 of the Bankruptcy Code thereby initiating the main bankruptcy case: *In re Exzert Watson*, Bankr. Case No. 26-10261-TBM (Bankr. D. Colo.) (the "Main Case").[5] On his Statement of Financial Affairs, the Debtor identified the State Court Action.[6] The Debtor characterized the State Court Action as "Concluded."[7] On his Schedule E/F, the Debtor identified the Plaintiff as a creditor holding two general unsecured, noncontingent, liquidated, and undisputed claims.[8] The Debtor described the first debt owed to the Plaintiff as $33,255.57 for a "Garnishment" and the second debt owed to the Plaintiff as $42,043.36 for a "Judgment."[9] The Main Case has been relatively uneventful. The Debtor attended his Section 341 meeting of creditors. Later, the Plaintiff filed a "Motion for Relief from Stay" (the "Motion for Relief from Stay") requesting authorization to complete a partition of proceeds from the sale of real property in State Court.[10] The Debtor did not contest the Motion for Relief from Stay. On April 14, 2026, the Court issued an "Order" granting the Motion for Relief from Stay.[11] Later, the Chapter 7 Trustee collected $4,296.00 and filed a "Final Report" proposing to make *de minimis* payments to a few creditors.[12] Nothing else of consequence occurred in the Main Case.

## B. The Adversary Proceeding.

### 1. The Complaint.

About three months after the Petition Date, on April 17, 2026, the Plaintiff, timely filed a "Complaint to Determine Dischargeability of Debt" (the "Complaint") thereby initiating this Adversary Proceeding: *Melissa Uballe v. Exzert Watson* (*In re Exzert Watson),* Adv. Pro. No. 26-1104-TBM (Bankr. D. Colo.) (the "Adversary Proceeding").[13] In the Complaint, the Plaintiff asserted a single claim for relief for nondischargeability of debt under Section 523(a)(6) (willful and malicious injury) based on the State Court Judgment.[14]

---

5 Main Case Docket No. 1. Unless otherwise indicated, the Court will refer to documents from the CM/ECF docket for the main Bankruptcy Case, *In re Exzert Watson*, Bankr. Case No. 26-10261-TBM (Bankr. D. Colo.) using the convention: "Main Case Docket No. ___."
6 Main Case Docket No. 15 at 3.
7 *Id*.
8 Main Case Docket No. 10 at 15.
9 *Id.*
10 Main Case Docket No. 22.
11 Main Case Docket No. 29.
12 Main Case Docket No. 33.
13 Docket No. 1.
14 *Id.*

### 2. The Debtor's Answer.

On May 18, 2026, the Debtor, acting *pro se*, submitted his "Answer" to the Complaint (the "Answer").[15] In the Answer, the Debtor admitted a few of the factual allegations in the Complaint, denied most of the factual allegations, asserted that the debt owed to the Plaintiff should be dischargeable through his Main Case, and advanced a handful of affirmative defenses.

### 3. Pre-Trial Proceedings.

On July 7, 2026, the Court conducted a Pretrial Scheduling Conference.[16] The Debtor's lawyer did not appear. Thereafter, the Court entered a "Scheduling Order" setting the dispute framed by the Complaint and Answer for a one-day trial commencing on December 4, 2026.[17] The Court also set a series of pre-trial deadlines.

### 4. The Summary Judgment Motion and Response.

In advance of the trial, on July 31, 2026, the Plaintiff timely filed her Summary Judgment Motion arguing that the State Court Judgment should be afforded collateral estoppel effect.[18] The Plaintiff asked for a determination of nondischargeability of a $76,944.15 debt under Section 523(a)(6). Thereafter, the Debtor, represented by counsel, filed his "Response" (the "Response") in opposition to the Summary Judgment Motion.[19] Then, the Plaintiff submitted a "Reply" (the "Reply") in support of the Summary Judgment Motion.[20]

The issues raised in the Summary Judgment Motion, Response, and Reply are fully-briefed. Having reviewed the Summary Judgment Motion, Response, and Reply, the Court has determined that oral argument is not necessary. Instead, the Court may decide the dispute based upon the written materials submitted by counsel for the Plaintiff and the Debtor.

## IV. Legal Standard Governing Motions for Summary Judgment and Burden of Proof.

Motions for summary judgment are governed by Fed. R. Civ. P. 56, as incorporated herein by Fed. R. Bankr. P. 7056. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). The moving party bears the initial burden of identifying the basis for its motion and designating those portions of the

---

15 Docket No. 5.
16 Docket No. 12.
17 Docket No. 14.
18 Docket No. 21.
19 Docket No. 30.
20 Docket No. 32.

record which it believes entitles it to judgment. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 323. In response, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . ." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Instead:

> [T]he nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant . . . . To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein.

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citations omitted). *See also Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016) (same); *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1181 (10th Cir. 2013) (nonmoving party has the affirmative duty of coming forward with evidence supporting his claim to summary judgment); *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (same).

In reviewing a motion for summary judgment, the Court must "view all facts and evidence in the light most favorable to the party opposing summary judgment." *Morris v. City of Colo. Springs*, 666 F.3d 654, 660 (10th Cir. 2012) (brackets omitted). But, unsupported, conclusory allegations will not create an issue of fact, and the nonmoving party must do more than provide its subjective interpretation of the evidence. *Tran v. Sonic Indus. Servs.*, Inc., 490 Fed. Appx. 115, 117-118 (10th Cir. 2012) (unpublished) ("Summary judgment is appropriate if the non-moving party cannot adduce probative evidence on an element of its claim upon which it bears the burden of proof.") (quoting *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995)). "A party cannot rely entirely on pleadings, but must present significant probative evidence to support its position." *Hansen v. PT Bank Negara Indonesia (Persero)*, 706 F.3d 1244, 1247 (10th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). And, "[i]f the nonmoving party fails to make a sufficient showing on an essential element with respect to which [it] has the burden of proof, judgment as a matter of law is appropriate." *Id.* However, "when the evidence could lead a rational fact-finder to resolve the dispute in favor of either party, summary judgment is improper." *C.L. Frates & Co. v. Westchester Fire Ins. Co.*, 728 F.3d 1187, 1189 (10th Cir. 2013).

## V. Procedural Rules for Selecting the Undisputed Facts.

The critical first step in adjudicating a motion for summary judgment is to identify the undisputed facts. Only then can the Court apply the law to the facts and reach a legal conclusion. Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.")

Procedural rules dictate how the alleged undisputed facts are to be presented and challenged. Fed. R. Civ. P. 56(c) governs the facts alleged by the movant or challenged by the non-movant:

> (c) Procedures.
>
> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or other materials . . . .

Then, Fed. R. Civ. P. 56(e) provides the consequences for "failing to properly support or address a fact":

> (e) Failing to Properly Support or Address a Fact. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

The Bankruptcy Court for the District of Colorado supplemented the Federal Rules of Civil Procedure by enacting its Local Bankruptcy Rules. L.B.R. 7056-1(a) governs summary judgment motions in Colorado and provides:

> (a) Motion and Memorandum in Support. Any motion for summary judgment pursuant to Fed. R. Bankr. P. 7056 must include . . . .
>
> (3) a short and concise statement, in numbered paragraphs containing only one fact each, of the

> material facts as to which the moving party contends there is no genuine issue to be tried . . . .

The counterpoint is L.B.R. 7056-1(b) which governs opposition to motions for summary judgment:

> (b) Response and Memorandum in Opposition. Responses in opposition must include:
>
> > (3) a short and concise statement of agreement or opposition, in numbered paragraphs corresponding to those of the moving party, of the material facts as to which it is contended there is a genuine issue to be tried . . . .

Each alleged fact or contravention of fact (whether by the movant or the nonmovant) must be properly supported. L.B.R. 7056-1(c) tells how:

> (c) Supporting Evidence. Each statement by the movant or opponent pursuant to subdivisions (a) or (b) of this Rule, including each statement controverting any statement of material fact by a movant or opponent, must be followed by citation to admissible evidence either by reference to a specific paragraph number of an affidavit under penalty of perjury or fact contained in the record. Affidavits must be made on personal knowledge and by a person competent to testify to the facts stated, which are admissible in evidence. Where facts referred to in an affidavit are contained in another document, such as a deposition, interrogatory answer, or admission, a copy of the relevant excerpt from the document must be attached with the relevant passages marked or highlighted.

Finally, L.B.R. 7056-1(d) states what happens if a non-movant does not properly contravene alleged undisputed facts:

> (d) Admission of Facts. Each numbered paragraph in the statement of material facts served by the moving party is deemed admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement served by the opposing party.

## VI. Undisputed Facts.

### A. The Alleged Undisputed Facts Presented by the Plaintiff.

In the Summary Judgment Motion, the Plaintiff complied with Fed. R. Civ. P. 56(c) and L.B.R. 7056-1(a) by presenting 16 alleged "Facts Asserted as Undisputed" as

follows:[21]

1. The Parties were in a relationship commencing around June 2013. [Answer ("Exh. 1"), ECF #5 ¶ 4; Findings of Fact, Conclusion of Law, And Order, Arapahoe Cty Dist. Ct., Case No. 2024CV31115 ("Exh. 2"), pg 2, sec. II]

2. On or about September 24, 2018, the Parties jointly purchased a home at 5021 South Rome Street, Aurora, CO 80015 ("Residential Home"). The Parties cohabitated in the Residential Home until approximately May 2024. [Exh. 1, ¶ 5; Exh. 2, pg 2 – 3, sec. II]

3. The relationship deteriorated due to infidelity issues and financial challenges by the fall of 2023. [Exh. 2, pg 3, sec. II]

4. On December 6, 2023, Uballe filed a complaint for partition of the Residential Home in the Arapahoe County District Court, Case No. 2023CV32321 ("Partition Action"). [Exh. 1, ¶ 7]

5. On May 23, 2024, Uballe filed an action for replevin, conversion, civil theft, emotional distress, and outrageous conduct in the Arapahoe County District Court, Case No. 2024CV31115 ("Civil Theft Action"). [Exh. 1, ¶ 11]

6. The two state court actions were consolidated and a joint trial was held on August 18, 2025. [ Exh. 2, pg. 2, sec. I]

7. Defendant responded and participated in the Civil Theft Action including filing an Answer and participating in the trial. [Exh. 1, ¶ 12; Exh. 2, pg. 2, sec. I]

8. On May 21, 2024, a day on which Defendant knew Uballe would not be in the Residential Home during her daughter's graduation ceremony, Defendant entered the Residential Home and removed Uballe's personal property. [Exh. 2, pg. 4, sec. II(a); pg. 5, sec. II(b); pg. 6, sec. II(c)]

9. Defendant further knew that Uballe intended to host guests to celebrate her daughter's graduation and that Uballe's graduation celebration would be disrupted and that Uballe would be embarrassed by having people over to an empty house. [Exh. 2, pg. 6, sec. II(c)]

10. The personal property removed included an 86" LG TV, BOSE Subwoofer, BOSE Soundbar, Svante coffee table, Svante end table, Svante media center, Capella sectional with 11 pillows 2 pieces, Capella chair with 2 pillows, birch wall divider, Yosemita rectangle formal dining table, 2 side chairs, 2 up back side chairs, 1 bench chair, Monaco barstools, and a Marble tall kitchen table with 6 chairs. [Exh. 2, pg. 4, sec. II(a)]

11. On October 3, 2025, judgment in the Civil Theft Action entered in favor of

---

[21] Docket No. 21 at 2-5.

Uballe and against Defendant with the court finding damages of $32,734.11 plus attorney's fees and costs. [Exh. 2, pg. 6-7, sec. III(i) & (ii)]

12. Specific findings of fact that are relevant to this dischargeability action include:

a. $10,911.37 of personal property was taken by Defendant [Exh. 2, pg 6, sec. II(c)];

b. That Defendant's testimony at trial was not credible [Exh. 2, pg. 4, sec. II(a)];

c. That the evidence showed that Defendant acted in retaliation against Uballe [Exh. 2, pg. 5, sec. II(a)];

d. That Defendant knew Uballe would be out of the home that day [Exh. 2, pg. 5, sec. II(b)];

e. That Defendant's actions to wrongfully take the personal property were intentional and knowing [Exh. 2, pg. 5, sec. II(b)];

f. That Defendant's actions were extreme and outrageous as evidenced by Defendant stealthily entering the Residential Home on a date and time when he knew Uballe would be away, that Defendant knew Uballe had scheduled a graduation party in the home, and Defendant knew because in removing the personal property, the Residential Home was without furniture [Exh. 2, pg. 6, sec. II(c)];

13. The state court trebled the damages to $32,734.11 pursuant to the civil theft statute and awarded attorney fees and costs. [Exh. 2, pg. 6, sec. II(c); pg. 7, sec. III(i) & (ii)]

14. On December 5, 2025, the state court awarded Uballe attorney fees and costs of $44,221.04. [Order Re Plaintiff's Motion in Support of Request for Reasonable Attorneys' Fees and Costs, Arapahoe Cty Dist. Ct., Case No. 2023CV32321 / 2024CV31115 ("Exh. 4"), pg. 6-7]

15. The attorney fees sought were only those attributed to the Civil Theft Action. Time that went towards both actions were attributed to the Civil Theft Action at 33%. [Plaintiff's Motion in Support of Request for Reasonable Attorneys' Fees and Costs, Arapahoe Cty Dist. Ct., Case No. 2023CV32321 ("Exh. 3"), pg. 2, ¶ 5;pg. 3-4; pg. 38 – 41]

16. Defendant filed an appeal with the Colorado Court of Appeals, Case No. 2025CA2390. The appeal was voluntarily dismissed with prejudice on December 23, 2025 and the mandate dismissing the appeal with prejudice entered on December 29, 2025. [Order of the Court, Colorado Ct. of Appeals, Case No. 2025CA2390 ("Exh. 5"); Mandate, Colorado Ct. of Appeals, Case No.

2025CA2390 ("Exh. 6")]

The Plaintiff supported all of such 16 alleged material undisputed facts with citations to "particular parts of materials in the record" including: (1) the Answer; (2) Orders from the State Court; and (3) Orders from the Colorado Court of Appeals.[22] The Court refers to the foregoing as the "Undisputed Facts."

## B. The Defendant Did Not Properly Controvert Undisputed Fact Nos. 1-14 and 16.

In the Response, the Debtor did not object to the admissibility of most of the 16 Undisputed Facts advanced by the Plaintiff. More specifically, the Debtor admitted Undisputed Fact Nos. 1, 2, 4, 5, 7, 11, 12a, 13, and 16.[23] However, the Debtor purported to be "in opposition to" Undisputed Fact Nos. 3, 6, 8, 9, 10, 12b-f, 14 and 15.[24]

Notwithstanding the Debtor's purported opposition, the Court determines that the Debtor has not *properly controverted* any of the Undisputed Facts except Undisputed Fact No. 15. Instead, the Debtor apparently wants to relitigate and "dispute" the State Court's findings of fact already finally decided in the Merits Judgment against the Defendant.

With respect to Undisputed Fact No. 3, such fact merely quotes verbatim from the State Court's factual findings in the Merits Judgment: "The relationship deteriorated due to infidelity issues and financial challenges by the fall of 2023." That is what the State Court found. The Debtor's Affidavit (attached to the Response) does not dispute that the State Court made the foregoing finding of fact in the final Merits Judgment. Instead, the Debtor apparently wants to reargue and dispute the State Court's finding of fact by stating: "Melissa and I have different opinions as to why our relationship ended." But, the foregoing does not properly controvert that the State Court's express factual findings in the final Merits Judgment. Thus, Undisputed Fact No. 3 is undisputed.

With respect to Undisputed Fact No. 6, that proposed fact states: "The two state court actions were consolidated and a joint trial was held on August 18, 2025." The Debtor apparently quarrels with the word "consolidated" and asserted in his Affidavit that the cases "were not consolidated by the Court. The issues were heard simultaneously at the Trial on August 18, 2025." The Debtor's point is a distinction without any difference and does not create a material contested factual issue. And besides, the State Court expressly determined in the Fees Judgment that the Court had "consolidated" the cases.

With respect to Undisputed Fact No. 8, that proposed fact states: "On May 21, 2024, a day on which Defendant knew Uballe would not be in the Residential Home during her daughter's graduation ceremony, Defendant entered the Residential Home and removed Uballe's personal property." And, Undisputed Fact No. 9 states:

---

22 *Id.* and Exs. 1-6.
23 Docket No. 30 at 6.
24 *Id.*

"Defendant further knew that Uballe intended to host guests to celebrate her daughter's graduation party . . . ." Such facts are based on quotes or paraphrases of factual findings from the Merits Judgment which determined: (1) "Defendant entered the Residential Home and removed Plaintiff's Personal Property while Plaintiff was at her daughter's graduation on May 21, 2024" and (2) "Defendant's actions in taking the Personal Property on the day he knew Plaintiff would be out of the home is irrefutable evidence that he acted intentionally and knowingly."[25] In the Debtor's Affidavit attached to the Response, the Debtor simply denied what the State Court already found in the final Merits Judgment. The Debtor contends: "I did not know the date she scheduled the graduation party." But, the foregoing does not properly controvert the State Court's express factual findings in the final Merits Judgment to the contrary. Thus, Undisputed Fact Nos. 8 and 9 are deemed undisputed.

With respect to Undisputed Fact No. 10, that passage states that the "personal property removed included "an 86" LG TV, BOSE Subwoofer, BOSE Soundbar, Svante coffee table, Svante end table, Svante media center, Capella sectional with 11 pillows 2 pieces, Capella chair with 2 pillows, birch wall divider, Yosemita rectangle formal dining table, 2 side chairs, 2 up back side chairs, 1 bench chair, Monaco barstools, and a Marble tall kitchen table with 6 chairs." In the Merits Judgment, the State Court expressly identified the foregoing property as the "Personal Property" and repeatedly found that the Debtor wrongfully removed the "Personal Property" "in retaliation" and "intentionally and knowingly" which constitutes "criminal theft." In the Debtor's Affidavit, the Debtor merely wants to reargue the point rejected by the State Court and contends that the removal of property was "agreed" with the Plaintiff. Again, that denial does not properly controvert the State Court's express factual findings in the final Merits Judgment to the contrary.

With respect to Undisputed Fact No. 12b-f, the Plaintiff asserted that "[s]pecific findings [in the Merits Judgment] that are relevant to the dischargeability action include:

> b. That Defendant's testimony at trial was not credible . . . ; c. That the evidence showed that Defendant acted in retaliation against Uballe . . .; d. That Defendant knew Uballe would be out of the home that day . . .; e. That Defendant's actions to wrongfully take the personal property were intentional and knowing . . .; f. That Defendant's actions were extreme and outrageous as evidenced by Defendant stealthily entering the Residential Home on a date and time when he knew Uballe would be away, that Defendant knew Uballe had scheduled a graduation party in the home, and Defendant knew because in removing the personal property, the Residential Home was without furniture . . . .

---

[25] Docket No. 21 Ex. 2 at 5.

All of the foregoing are exact quotations or paraphrases of factual findings by the State Court in the final Merits Judgment. The Debtor apparently wants to contest all of the foregoing again through his Affidavit. But the Debtor's denials, which already have been fully litigated and decided against the Debtor, cannot create a material factual dispute precluding summary judgment.

With respect to Undisputed Fact No. 14, that fact states: "On December 5, 2025, the state court awarded Uballe attorney fees and costs of $44,221.04." The Debtor apparently "opposes" that fact. However, through the Fees Judgment, the State Court expressly awarded the Plaintiff $44,221.04 for attorneys' fees. The Debtor cannot manufacture a material dispute of fact by simply denying what the Fees Judgment explicitly says.

### C. <u>Undisputed Fact No. 15 Is Not Properly Supported and Is Disputed</u>.

Undisputed Fact No. 15 states:

> The attorney fees sought [in the Fees Judgment] were only those attributed to the Civil Theft Action. Time that went towards both actions were attributed to the Civil Theft Action at 33%.

To support those statements, the Plaintiff cited: "Plaintiff's Motion in Support of Request for Reasonable Attorneys' Fees and Costs, Arapahoe Cty Dist. Ct., Case No. 2023CV32321 ("Exh. 3"), pg. 2, ¶ 5; pg. 3-4; pg. 38 – 41." The Court refers to the foregoing Exhibit as the "Fees Motion."

However, the Fees Motion does not support the position that all of the fees awarded by the State Court in the Fees Judgment are *only* in relation to the State Court Action (Case No. 2024-CV-31115). Instead, the Fees Motion was filed in a different case: *Melissa Uballe v. Exzert Watson*, Case No. 2023-CV-32321 (Arapahoe District Court, Colorado) (the "Partition Action"). The Fees Motion certainly refers to the Merits Judgment in the State Court Action; but it does not state that the requested fees were "*only those attributed to the Civil Theft Action.*" To the contrary, the Fees Motion provides: "The attorneys' fees incurred by Plaintiff and costs *in both cases* and in preparing the instant motion . . . are $44,306.04."[26] It is true that the Fees Motion *proposes* an allocation of fees as between the State Court Action and the Partition Action.[27] The Fees Motion states:

> Once the cases were combined, one spreadsheet was tracked. In an effort to document fairness in fees, based on work needed by each case, counsel documents fees 100% to the civil theft case are highlighted in yellow and a mixture of cases are documented in blue. As the Partition case was

---

[26] Docket No. 21, Ex. 3 at 2.
[27] *Id.*, Ex. 3 at 3-4.

> larger, counsel set a 67% attribution to that case and 33% to the civil theft case.[28]

But, the foregoing statement does not explain the many entries not colored in yellow or blue. In any event, the yellow entries, which are supposedly for the State Court Action, aggregate to only $6,065.50; not $44,306.04.[29] The blue entries constitute most of the entries. However, given the volume, the Court cannot easily compute the blue entry totals or whether they were allocated in some way. Furthermore, the Court cannot tie any of the numbers to the amount requested in the Fee Motion ($44,306.04) or the slightly different amount in the Fees Judgment attributable to fees ($43,248.96).

Perhaps more problematically, the Fees Judgment itself does not specify or clarify whether the awarded fees and costs ($44,221.04) are for the State Court Action or the Partition Action or both. The Fees Judgment refers to the State Court Action and Partition Action having been "consolidated."[30] And, it notes that "plaintiff asserts that the time and labor *on the two cases* were reasonable and necessary . . . ."; then the State Court found that "the total amount of fees incurred by Plaintiff are reasonable and necessary for defending Plaintiff's claims against Defendant."[31] Although the Fees Judgment awarded the Plaintiff $44,221.04 in attorneys' fees and costs, the Court simply cannot ascertain whether such amount was solely for the State Court Action (or instead for the Partition Action) or a "mixture" of both.

So, there is no real support for Undisputed Fact No. 15. Also, the Debtor contests the point. In the Debtor's Affidavit attached to the Response, the Debtor claims that "[t]he award of attorney fees is not based on the Civil Theft judgment." Based on the current state of the evidentiary record, the Court cannot ascertain which party is correct. So, the Court cannot accept Undisputed Fact No. 15 as undisputed for purposes of the Summary Judgment Motion.

## VII. Legal Analysis.

### A. The General Framework for Nondischargeability Determinations.

In the Complaint, the Plaintiff asserts that the Debtor is indebted to her by reason of the Merits Judgment and Fees Judgment and that such debt is nondischargeable under Sections 523(a)(6) which provides:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt — . . .
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity . . . .

---

28 *Id.*, Ex. 3 at 3-4.
29 *Id.*, Ex. 3 at 38-40.
30 *Id., Ex. 4 at 3.*
31 *Id.*, Ex. 4 at 5.

11 U.S.C. § 523(a)(6).

Section 523(a) nondischargeability claims all require a two-part analysis. First, "the bankruptcy court must determine the validity of the debt under applicable law." *Hatfield v. Thompson* (*In re Thompson*), 555 B.R. 1, 8 (10th Cir. BAP 2016); *see also Lang v. Lang* (*In re Lang*), 293 B.R. 501, 513 (10th Cir. BAP 2003) (if the alleged debt is for fraud, "state law of fraud controls with respect to whether fraud has occurred"). This is referred to as the "claim on the debt" component. *Thompson*, 555 B.R. at 8. Second, if there is a valid debt, "the bankruptcy court must determine the dischargeability of that debt under Section 523." *Id*.; *see also Lang*, 293 B.R. at 513 ("bankruptcy law controls with respect to the determination of nondischargeability"). This is referred to as the "dischargeability" component. *Thompson*, 555 B.R. at 8. In the context of claims based upon fraud and fraudulent concealment, there may be substantial overlap between the "claim on the debt" and the "dischargeability" components.

The Plaintiff bears the burden of establishing nondischargeability of a particular debt under Section 523(a) by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991) ("requiring the creditor to establish by a preponderance of the evidence that his claim is not dischargeable reflects a fair balance between these conflicting interests."); *Houston v. Munoz* (*In re Munoz*), 536 B.R. 879, 884 (Bankr. D. Colo. 2015) (requiring creditor to prove Section 523(a) claims by a preponderance of the evidence). Additionally, exceptions to discharge under Section 523(a) "are to be narrowly construed, and because of the fresh start objectives of bankruptcy, doubt is to be resolved in the debtor's favor." *Bellco First Fed. Credit Union v. Kaspar* (*In re Kaspar*), 125 F.3d 1358, 1361 (10th Cir. 1997). *See also Ibdaiwi v. Sawaged* (*In re Sawaged*), 2011 WL 880464, at *3 (10th Cir. BAP Mar. 15, 2011) (same).

**B. <u>Collateral Estoppel Standards</u>.**

The Summary Judgment Motion presents a classic argument under the collateral estoppel doctrine. As set forth above, in Section 523(a) disputes, the Court must decide whether the debtor owes a debt and whether such debt is nondischargeable for a variety of reasons. However, the doctrine of collateral estoppel (sometimes referred to as issue preclusion) "precludes relitigation of an issue [of fact or law] that was litigated and decided in a previous proceeding." *Flanders v. Lawrence* (*In re Flanders*), 517 B.R. 245, 258 (Bankr. D. Colo. 2014); *see also Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."); *See Melnor, Inc. v. Corey* (*In re Corey*), 583 F.3d 1249, 1251 (10th Cir. 2009). Collateral estoppel "is a doctrine designed to promote the fundamental policies of finality, economy, consistency, and comity in the judicial process." *Flanders*, 517 B.R. at 258 (citing *Kremer v. Chem. Const. Corp*., 456 U.S. 461, 466 n.6 (1982)).

> In determining the preclusive effect of a state court judgment, the full faith and credit statute, 28 U.S.C. § 1738,

> "directs a federal court to refer to the preclusion law of the State in which judgment was rendered." *Nichols v. Bd. of Cty. Comm'rs*, 506 F.3d 962, 967 (10th Cir. 2007) (quoting *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S. Ct. 1327, 84 L. Ed. 2d 274 (1985)). Issue preclusion "is a judicially created, equitable doctrine that bars the relitigation of an issue that has been previously decided in another proceeding." *Reynolds v. Cotten*, 274 P.3d 540, 543 (Colo. 2012) (citing *In re Tonko*, 154 P.3d 397, 405 (Colo. 2007)). It is designed to "relieve parties of multiple lawsuits, conserve judicial resources, and promote reliance on the judicial system by preventing inconsistent decisions." *Id*. (quoting *Tonko*, 154 P.3d at 405).

*In re Hauck*, 489 B.R. 208, 213 (D. Colo. 2013).

It is black-letter law that collateral estoppel may be (and frequently is) "invoked to bar relitigation of the factual issues underlying the determination of dischargeability [under Section 523] . . . ." *Klemens v. Wallace* (*In re Wallace*), 840 F.2d 762, 764 (10th Cir. 1988); *see also Grogan*, 498 U.S. at 290 ("application of that standard [preponderance of the evidence] will permit exception from discharge of all fraud claims creditors have successfully reduced to judgment."); *Brown v. Felsen,* 442 U.S. 127, 139 n.10 (1979) ("if, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17 [the predecessor of Section 523], then collateral estoppel . . . would bar relitigation of those issues in the bankruptcy court."); *Steward Software Co., LLC v. Kopcho* (*In re Kopcho*), 2014 WL 3933657, at *2 (Bankr. D. Colo. Aug. 12, 2014); *McCain Foods USA Inc. v. Shore* (*In re Shore*), 317 B.R. 536, 541 (10th Cir. BAP 2004) ("Collateral estoppel applies in bankruptcy court actions to determine the dischargeability of a debt.").

In this case, the collateral estoppel law of the State of Colorado applies. Under Colorado law, collateral estoppel bars subsequent relitigation of an issue if:

> (1) The issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) The party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding; (3) There was a final judgment on the merits in the prior proceeding; and (4) The party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.

*Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84-85 (Colo. 1999) (citing *Michaelson v. Michaelson*, 884 P.2d 695, 700-01 (Colo. 1994)). *See also Reynolds v. Cotton*, 274 P.3d 540, 543 (Colo. 2012); *In re Tonko*, 154 P.3d 397, 405 (Colo. 2007).

**C. <u>The Summary Judgment Motion</u>.**

In the Summary Judgment Motion, the Plaintiff contends:

> The findings of the state court as reflected in the Findings of Fact and Conclusions of Law [the Merits Judgment] are res judicata and/or collateral estoppel as between the parties to this adversary proceeding. Given that the state court claims were intentional torts (civil theft and outrageous conduct), the factual findings from the state court are more than sufficient to support a finding of nondischargeability pursuant to 11 U.S.C. § 523(a)(6) in this adversary proceeding.[32]

Accordingly, further examination of the Merits Judgment in the State Court Action is warranted.

The Plaintiff commenced the State Court Action against the Debtor on May 23, 2024. (Undisputed Fact No. 5.) She asserted claims for replevin, conversion, civil theft, emotional distress, and outrageous conduct. (*Id.*) The State Court conducted a two-day trial on the State Court Action and the Partition Action at the same time. The Debtor defended and participated. (Undisputed Fact No. 7.) After the trial, the State Court entered the Merits Judgment.

In the Merits Judgment, the State Court determined, among other things:

- The Debtor stole $10,911.37 of personal property from the Plaintiff.
- The Debtor's testimony at trial was not credible.
- "[T]he evidence shows that Defendant [Debtor] removed Plaintiff's Personal Property in retaliation."
- The Debtor knew the Plaintiff would be out of the home the day he stole the Personal Property.
- The Debtor's actions in stealing the Personal Property were intentional and knowing.
- The Debtor's "actions were extreme and outrageous."
- The Debtor "stealthily entered the Residential Home on a date and time when he knew Plaintiff would be away. Defendant [Debtor] knew that Plaintiff had scheduled a graduation party in the home. Defendant knew his actions were outrageous because in removing Plaintiff's Personal Property, the Residential Home was without furniture."

---

32 Docket No. 21 at 6.

Accordingly, on October 3, 2025, the State Court entered the Merits Judgment and found the Debtor liable for civil theft and outrageous conduct under Colorado law. Then, the Court entered judgment in favor of the Plaintiff and against the Debtor for $32,734.11 in treble damages for civil theft. The Court also awarded the Plaintiff "[a]ttorney's fees and costs for prosecuting this action." However, the State Court did not specify an amount of attorney's fees and costs in the Merits Judgment and instead directed the Plaintiff to "submit an affidavit of attorney's fees and costs within 14 days."

Later, the State Court entered the Fees Judgment awarding the Plaintiff $44,221.04 in attorneys' fees and costs against the Debtor. However, as set forth above, the Court does not have a sufficient evidentiary foundation to determine what portion of the Fees Judgment stems from the civil theft claim decided in the Merit Judgment.

## D. <u>The Merits Judgment Is Entitled to Collateral Estoppel Effect and Is Nondischargeable</u>.

The Merits Judgment satisfies all the requirements for the application of the collateral estoppel doctrine under *Bebo Constr. Co.*, 990 P.2d 84, and dictates a determination of nondischargeability under Section 523(a)(6).

Skipping the first collateral estoppel factor for the moment (as it requires more detailed analysis), under *Bebo Constr. Co.*, 990 P.2d 84, the **second** requirement for invocation of collateral estoppel under Colorado law is whether "the party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding." This requirement plainly is met because the Debtor was a defendant in the State Court Action and actively litigated the dispute.

Per *Bebo Constr. Co.*, 990 P.2d 84, the **third** requirement for invocation of collateral estoppel under Colorado law is whether "there was a final judgment on the merits in the prior proceeding." The Merits Judgment is a final judgment on the merits. The Debtor dismissed his appeal of the Merits Judgment. So, this requirement is met.

Under *Bebo Constr. Co.*, 990 P.2d 84, the **fourth** requirement for invocation of collateral estoppel under Colorado law is whether "the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding." The Debtor had a full and fair opportunity to litigate in the State Court Action. The Debtor denied liability and defended throughout the two-day trial in the State Court.

That leaves only the **first** requirement for invocation of collateral estoppel under Colorado law per *Bebo Constr. Co.*, 990 P.2d 84: whether "the issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding." This element also is satisfied.

The Plaintiff and the Debtor actually litigated the facts in the State Court Action, including for civil theft under the Colorado Civil Theft Statute. The Colorado Criminal Theft Statute, COLO. REV. STAT. § 18-4-401(1), provides, in relevant part:

> (1) A person commits theft when he or she knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception . . . . and:
>
> (a) Intends to deprive the other person permanently of the use or benefit of the thing of value;
>
> (b) Knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit;
>
> (c) Uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive the other person permanently of its use or benefit; [or]
>
> (d) Demands any consideration to which he or she is not legally entitled as a condition of restoring the thing of value to the other person . . . .

COLO. REV. STAT. § 18-4-401(1)(a)-(d).

The statute is applicable in civil matters per COLO. REV. STAT. § 18-4-405 (the "Civil Theft Statute") which states, in relevant part:

> All property obtained by theft, robbery, or burglary shall be restored to the owner, and no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his right to such property. The owner may maintain an action not only against the taker thereof but also against any person in whose possession he finds the property. . .

The Civil Theft Statute also serves as a basis for obtaining treble damages. *Id.* In Colorado, a finding of civil theft requires a defendant to be found "guilty of theft under Colorado's criminal statutes." *Kopcho*, 2014 WL 3933657, at *3 (citing *Itin v. Ungar*, 17 P.3d 129, 133 (Colo. 2000) ("[T]he General Assembly intended for this statute to require proof of the commission of a criminal act....")).

In the Merits Judgment, the State Court found the Debtor liable for "civil theft" under C.R.S. § 18-4-405. Under collateral estoppel requirements, "the issue precluded" (Section 523 nondischargeability) is functionally identical to "an issue actually litigated and necessarily adjudicated" (civil theft) in the State Court Action. *See Chong v. Chong (In re Chong)*, 523 B.R. 236 (Bankr. D. Colo. 2014) (quoting *Tague & Beem, LLC v. Tague (In re Tague)*, 137 B.R. 495, 502 (Bankr. D. Colo. 1991) ("The basic elements of 'theft' under Colorado Statute [C.R.S. 18-4-401 *et seq.*] parallel

the standards applied by the Tenth Circuit to determine whether an injury is willful and malicious under Section 523(a)(6).").

The Merits Judgment plainly establishes the existence of a debt for civil theft in the amount of $32,734.11. Accordingly, the "claim on the debt" component of a nondischargeability action is satisfied. *Thompson*, 555 B.R. at 8. With respect to the "dischargeability" component of a nondischargeability claim, the Court delves into Section 523(a)(6) a bit further.

Section 523(a)(6) makes nondischargeable any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." As the text of the statute makes plain, nondischargeability under Section 523(a)(6) requires both a "willful injury" and a "malicious injury." *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004) ("Without proof of *both* [willful and malicious injury], an objection to discharge under [Section 523(a)(6)] must fail.") (emphasis in original); *Glencove Holdings, LLC v. Bloom (In re Bloom)*, 2022 WL 2679049, at *7 (10th Cir. July 12, 2022) (unpublished) ("to determine nondischargeability under § 523(a)(6) we must review whether Mr. Bloom caused both a willful and malicious injury."). Stated differently, Section 523(a)(6) "requires proof of two distinct elements — the injury must be both 'willful' *and* 'malicious.' Analyzing and applying 'willful' and 'malicious' separately is the better approach." *First Am. Title Ins. Co. v. Smith (In re Smith)*, 618 B.R. 901, 912 (10th Cir. BAP 2020) (emphasis in original).

According to the Supreme Court, to satisfy the willful injury part of Section 523(a)(6), the plaintiff must prove "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original). The focus is whether the Debtor acted with the "actual intent to cause injury." *Id.* "Willful" injury is a higher standard than "'reckless' or 'negligent'" injury. *See id.* Thus, "debts arising [merely] from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id*. at 64. Explaining further, the Supreme Court observed that:

> [T]he (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require the actor to intend "the *consequences* of an act," not simply "the act itself."

*Id*. at 61-62 (emphasis in original).

To establish a willful injury, a creditor may use "direct evidence that the debtor acted with the specific intent to harm a creditor or the creditor's property, or . . . indirect evidence that the debtor desired to cause the injury or believed the injury was substantially certain to occur." *Smith*, 618 B.R. at 912. *See also Moore,* 357 F.3d at 1129 ("to constitute a willful act under § 523(a)(6), the debtor must 'desire . . . [to cause] the consequences of his act or . . . believe [that] the consequences are substantially certain to result from it.'"); *Cocoma v. Nigam (In re Nigam)*, 780 Fed. Appx. 559, 563

(10th Cir. 2019) (unpublished table decision) (reaffirming *Moore* formulation of willful injury); *Via Christi Reg'l Med. Ctr. v. Englehart (In re Englehart)*, 229 F.3d 1163, at *3 (10th Cir. 2020) (unpublished) ("§ 523(a)(6) turns on the state of mind of the debtor, who must have wished to cause injury or at least believed it was substantially certain to occur."). It is a "subjective standard." *Smith*, 618 B.R. at 912.

The application of the Section 523(a)(6) "willful injury" standard in this Adversary Proceeding is not challenging. Civil theft is an intentional tort. Colorado precedent dictates that a prior state court judgment for civil theft satisfies the "willful injury" requirement of Section 523(a)(6). *C-Ball Ventures, LLC v. Oltmann (In re Oltmann)*, 505 B.R. 311 (Bankr. D. Colo. 2014) is right on point. In that decision, a state court entered a $5,275.00 judgment for civil theft and trebled the actual damages. *Id*. at 313. The *C-Ball* court ruled:

> The County Court found that the Defendant is liable to the Plaintiff for civil theft under Colorado's civil theft statute. Colo. Rev. Stat. § 18–4–405. The predicate to a finding of liability for civil theft is a finding that a defendant has committed theft under Colorado's criminal theft statute. *Itin v. Ungar,* 17 P.3d 129, 134 (Colo. 2000) ("Only upon proof of the criminal act of theft may the owner recover treble damages, fees, and costs.").
> . . . .
>
> Thus, the County Court's finding of liability for theft necessarily includes the finding that the Defendant was aware that he was in possession of an automobile that was the property of the Plaintiff and, at minimum, he was aware that his conduct was "practically certain" to deprive the Plaintiff of the use and benefit of its property.
>
> *The Defendant's knowing conduct, necessarily found as part of the County Court's judgment on the theft allegation, is precisely the conduct required to prove the willfulness prong of § 523(a)(6)*.

*Id*. at 316-17 (emphasis added). Other cases are in accord. *Young v. Caruso (In re Caruso)*, 2026 WL 1407242, at *4 (Bankr. D. Colo. May 19, 2026) ("the debtor's 'knowing conduct' necessarily found as part of a state court judgment for theft is 'precisely the conduct required to prove the willfulness prong of § 523(a)(6).")

Under Section 523(a)(6), the Plaintiff also must show "malicious injury." The standard for "malicious" injury is different than "willful" injury. Something else is required. But what? The most recent binding appellate decision on Section 523(a)(6) puts it this way:

> [M]alicious injury requires "evidence of the debtor's motives." *In re Smith*, 618 B.R. 901, 919 (B.A.P. 10th Cir. 2020) (quotation marks omitted). To be malicious, the debtor must have "acted with a culpable state of mind vis-à-vis the actual injury caused the creditor." *Id*. (quotation marks omitted). The malicious injury requires that the action be "wrongful and without just cause or excuse." *Id.*

*Bloom*, 2022 WL 2679049, at *7. *See also Smith*, 618 B.R. at 919. The Tenth Circuit also explained:

> [P]ersonal animus is not a requirement for malicious injury. *Smith*, 618 B.R. at 919 (describing the requirements for malicious injury); *see also Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (explaining malicious injury means "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will" (quoting *In re Stelluti*, 94 F.3d 84, 87 (2d Cir. 1996)).

*Bloom*, 2022 WL 2679049, at *7. So, malice can be shown if the injury was wrongful and inflicted "without just cause or excuse." *Wagner v. Wagner (In re Wagner)*, 492 B.R. 43, 55 (10th Cir. BAP 2015) (emphasis omitted); *Kopcho,* 2014 WL 3933657, at *6 (same).

Just as with "willful injury," a prior state court judgment for civil theft also establishes "malicious injury." In the Merits Judgment, the State Court found that the Debtor had engaged in knowing and intentional misconduct for the purpose (or motive) of retaliation and that such action was extreme and outrageous. A civil theft determination is the equivalent of proving malice. *C-Ball*, 505 B.R. at 317 ("Proof of intentional theft in the [Colorado] County Court also establishes the malice prong under § 523(a)(6)."); *Caruso*, 2026 WL 1407242, at *4 ("the malice prong of § 523(a)(6) is satisfied by a court's finding of liability for civil theft under C.R.S. § 18-4-405 because malice may be presumed by the conduct necessary to find the debtor liable under that [civil theft] statute.").

In sum, the Merits Judgment finding the Debtor liable for civil theft under Colo. Rev. Stat. § 18-4-401 *et seq.* proves nondischargeability of a debt for $32,734.11 under Section 523(a)(6). *All Terrain Ponds and Sprinklers, LLC v. Moody (In re Moody)*, 2026 WL 1407241, at *4 (Bankr. D. Colo. May 19, 2026) ("a state court judgment for civil theft has a preclusive effect on a § 523(a)(6) claim because the intent elements required to prove a civil theft claim in Colorado are the same as the "willful" and "malicious" elements necessary for a § 523(a)(6) claim.").

**E. <u>The Court Cannot Grant Summary Judgment on the Fees Judgment</u>.**

After the entry of the Merits Judgment, the State Court also entered the Fees Judgment in favor of the Plaintiff and against the Debtor for $44,221.04 in attorney's fees and costs. The Fees Judgment plainly establishes that the Debtor is indebted to the Plaintiff for $44,221.04.

However, the Court has insufficient evidence to grant summary judgment on the "dischargeability component" under Section 523(a)(6) because the Court does not know whether all of the Fees Judgment was awarded specifically and only for the civil theft claim asserted in the State Court Action. Plainly, attorney's fees and costs may be recovered for a civil theft claim. And, to the extent awarded for civil theft, such fees and costs presumptively would be nondischargeable under Section 523(a)(6). *Cohen v. de la Cruz*, 523 U.S. 213, 217 (1998); *see also Nolan v. Smith (In re Smith),* 321 B.R. 542 (Bankr. D. Colo. 2005) (determining that attorneys' fees flowing from debts found to be nondischargeable under Section 523(a)(6) are themselves nondischargeable).

But, the Court understands that the Plaintiff and Debtor were engaged in two separate lawsuits (the State Court Action and the Partition Action). The Plaintiff's Fees Motion did not plainly separate and identify the portion of the Plaintiff's request for attorney's fees and costs attributable to the Plaintiff's civil theft claim in the State Court Action or even differentiate between the State Court Action and the Partition Action. The Plaintiff's Fees Motion mere statement that "counsel set a 67% attribution to that case [the Partition Action] and 33% to the civil theft case" without any clear factual citation, is not adequate for the Court to determine how much of the attorney fees arise from the Plaintiff's civil theft claim. Similarly, the Fees Judgment does not tie the $44,221.04 in awarded attorney's fees and costs to the civil theft claim in the State Court Action or even make clear that the fees and costs were awarded in the State Court Action as opposed to the Partition Action. At least for now, on the basis of the summary judgment record, the Court cannot make the jump to determine that the Fees Judgment also is nondischargeable.

## VIII. <u>Conclusion</u>.

For the foregoing reasons, the Court GRANTS the Summary Judgment Motion, in part, and DENIES it, in part.

More specifically, the Court determines that the Merits Judgment is entitled to preclusive effect under the collateral estoppel doctrine. For the reasons set forth above, the Court ORDERS that pursuant to Section 523(a)(6), the Debtor is indebted to the Plaintiff in the amount of $32,734.11 under the Merits Judgment and such amount is nondischargeable under Section 523(a)(6).

The Court DENIES summary judgment with respect to the $44,221.04 in awarded attorney's fees and costs under the Fees Judgment because the Court does

not have sufficient evidence to prove that such amount was awarded for the Plaintiff's civil theft as adjudicated in the Merits Judgment.

The Court FURTHER ORDERS that post-judgment interest shall accrue on the $32,734.11 under the Merits Judgment.

DATED this 10th day of November, 2026.

BY THE COURT:

Thomas B. McNamara
United States Bankruptcy Judge